COPY

**BRYAN CAVE LLP**
KERRY MOYNIHAN (SBN: 250571)
3161 Michelson Dr., Suite 1500
Irvine, CA 92612
Telephone: (949) 223-7000
Facsimile: (949) 223-7100
Email: kerry.moynihan@bryancave.com

Attorneys for Oaktree Capital Group
Holdings GP, LLC

FILED
CLERK, U.S. DISTRICT COURT

OCT 29 2013

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

OAKTREE CAPITAL GROUP
HOLDINGS GP, LLC

    Movant,

vs.

MORREALE HOTELS, LLC,

    Respondent.

Misc. Case No. **CV13-7993** DSF (JEMx)

Subpoena issued in Case No. 12-35230-ABC (pending in the United States Bankruptcy Court for the District of Colorado)

**OAKTREE CAPITAL GROUP HOLDINGS GP, LLC'S MOTION TO QUASH THE DEBTOR'S THIRD PARTY SUBPOENA**

Date: December 2, 2013
Time: 1:30 P.M.
Courtroom 840

    COMES NOW, Oaktree Capital Group Holdings GP, LLC, ("Oaktree"), and pursuant to Federal Rule of Civil Procedure 45(c)(3) hereby submits this Motion to Quash Debtor Morreale Hotels' ("MHL" or "Debtor") Third Party Subpoena (the "Subpoena"). The Subpoena is substantively objectionable and places undue burden on Oaktree in violation of Rule 45. First, the Subpoena is overbroad. It demands that Oaktree search for documents from thousands of employees and entities most of whom have never had any contact or interaction with Debtor. Second, the Subpoena requests wholly irrelevant material, much of which the Bankruptcy Court in Colorado already received 2011-SIP-1 CRE/CADC Venture, LLC ("SIP") from providing. Finally, to the extent that any of the requests are valid, they are directed at the incorrect party. SIP and its manager, Acorn Loan Portfolio Private Owner IV,

1

1   LLC ("Acorn"), own and actively manage the loans in question and both have

2   already responded to Debtor's discovery requests.  Oaktree is not the proper party to

3   provide the documents requested.  The Subpoena should be quashed.

## I. BACKGROUND

5       1.      The Debtor is the owner of two pieces of real property, one located at

6   101-115 Broadway (the "Broadway Property") and the other located at 3015

7   E. Colfax Ave. (the "Colfax Property" and, collectively with the Broadway

8   Property, the "Properties").

9       2.      The Debtor filed for relief under Chapter 11 of the Bankruptcy Code

10  on December 14, 2012 in the United States Bankruptcy Court for the District of

11  Colorado (the "Colorado Court").

12      3.      SIP is the owner and holder of two promissory notes from Debtor that

13  were assigned to SIP on August 4, 2011.  The promissory notes are secured by the

14  Properties which are located in Denver, Colorado.  SIP's notes sit in first position on

15  both of the properties.  To date, Debtor has not disputed the amount, validity,

16  priority or scope of SIP's liens on the Properties.

17      4.      Oaktree is a global asset management firm specializing in alternative

18  investment strategies.  Oaktree oversees companies that manage billions of

19  investment dollars, primarily on behalf of pension funds, foundations, endowments,

20  and sovereign wealth funds.

21      5.      On May 3, 2013, the United States Trustee filed his Motion to Dismiss

22  Debtor's case pursuant to 11 U.S.C. § 1112(b)(4).  On May 16, 2013, SIP filed its

23  Motion for Relief from Automatic Stay pursuant to 11 U.S.C. § 362(d)(2).   On June

24  12, 2013, Debtor filed its First Amended Plan of Reorganization Dated April 3, 2013

25  (the "Plan").

26      6.      The central issue in each of these filings is the feasibility of Debtor's

27  Plan.  On June 13, 2013, at a preliminary hearing on SIP's Motion for Relief from

28

1  Stay, the court narrowed the issues for trial to plan feasibility and adequate
2  protection.

3        7.     The Colorado Court has set an evidentiary hearing for December 2-5,
4  2013 on the Motion for Relief from Stay and Debtor's Reorganization Plan
5  ("Contested Matters").

6        8.     On August 20, 2013 Debtor served SIP with extensive written
7  discovery consisting of over 66 individual requests. SIP lodged relevancy and other
8  objections against Debtor's discovery requests. Debtor filed a Motion to Compel
9  and the Colorado Court ruled on each of SIP's objections. A majority of SIP's
10 objections were sustained by the Colorado Court.

11       9.     On October 2, 2013 Debtor served the Subpoena on Oaktree. The
12 Subpoena requests over 30 categories of documents and contains 26 individual
13 requests for the production of documents. A copy of the Subpoena is attached
14 hereto as Exhibit A. Moreover, the Subpoena requests many of the same discovery
15 requests that the Colorado Court rejected when it evaluated Debtor's discovery
16 requests to SIP.

17      10.     On October 8, 2013 SIP served its responses to all of the discovery
18 requests that were not rejected by the Colorado Court.

19 ## II. LEGAL STANDARD

20     "On timely motion, a district court shall quash or modify a subpoena if the
21 subpoena fails to allow reasonable time for compliance, . . . or subjects a person to
22 undue burden." *Pointer v. DART,* 417 F.3d 819, 821 (8th Cir. 2005) (*citing*
23 Fed.R.Civ.P. 45(c)(3)(A)). "A subpoena must also seek relevant information." *Id.*
24 (*citing Roberts v. Shawnee Mission Ford, Inc.,* 352 F.3d 358, 360-62 (8th Cir. 2003)
25 and Fed.R.Civ.P. 26(b)(1)); *see also Unigene Laboratories, Inc. v. Apotex, Inc.*, No.
26 C 07-80218, 2007 WL 2972931, *2 (N.D.Cal. Oct. 10, 2007) (noting that "[t]he
27 subpoena is subject to the relevance requirements set forth in Rule 26(b)). In
28 "determining the propriety of a subpoena," a court must "balance[] the relevance of

3

1   the discovery sought, the requesting party's need, and the potential hardship to the

2   party subject to the subpoena." *Century Sur. Co. v. Master Design Drywall, Inc.*,

3   Civil No. 09cv0280, 2010 WL 2231890, *1 (S.D.Cal. June 2, 2010).

5                           **III. DISCUSSION**

6   **A.**      **The Requested Discovery Is Irrelevant.**

7          **1.**     **The Subpoena Exceeds The Scope of Discovery That The**

8                **Bankruptcy Court for the District of Colorado Has Already Defined In The Case.**

9       Lack of relevancy merits quashing Debtor's subpoena.  Over a third of

10  Debtor's requests have already been outright rejected by the Colorado Court for lack

11  of relevancy.  The information controlled by Oaktree, an entity far removed from

12  Debtor's bankruptcy, is exponentially less relevant than the information Debtor

13  could harvest from the parties to the bankruptcy.  Debtor ignores this distance and

14  the Colorado Court's rulings on the scope of relevant discovery with its Subpoena.

15  Consequently, Debtor should be barred from accessing most if not all the

16  information sought in the Subpoena, and the Subpoena should be quashed.

17       The Colorado Court's limitations on discovery should apply here.  The

18  Bankruptcy Court for the District of Colorado is the court most familiar with the

19  merits of the underlying case as the action has been in front of the Colorado Court

20  for almost a year.  This familiarity leaves the Colorado Court in the best position to

21  determine relevancy.  *See generally, U.S. v. Henderson*, 337 F.3d 914, 918 (7th Cir.

22  2003) (noting that the court most familiar with the case as a whole "is in the best

23  position to judge the admissibility of evidence"); *Telecom Technical Services, Inc. v.*

24  *Siemens Rolm Commc'ns.*, No. CIV.A.97-MC-222-KHV, 1998 WL 638370, *3 (D.

25  Kan. Sept. 14, 1998) (in ruling on a motion to compel documents issued via a

26  subpoena in the District of Kansas, the Kansas court found no reason "to question

27  the relevancy rulings" of the originating court in the underlying litigation on prior

28  requests for similar documents because "[t]hat court has more familiarity with the

1   claims and defenses at issue in the underlying litigation than this court").

2       Debtor ignores the Colorado Court's limitation on discovery.   Instead,

3   Debtor's Subpoena makes the exact same document requests of Oaktree that it

4   previously made of SIP in the Colorado Case.[1]   The Colorado Court sustained SIP's

5   relevancy objections to requests containing the same exact language as Request Nos.

6   2, 3, 4, 16, 17, 18, 23, 24, and 26.   Debtor ignores the Colorado Court's guidance in

7   the Subpoena.   Obviously, Debtor hopes this Court's lack of familiarity with the

8   matter will result in broader discovery.   Debtor's surreptitious Subpoena should not

9   result in a higher burden on Oaktree, a third party to the litigation, than the Colorado

10   Court placed on the parties to the litigation.   Debtor's Subpoena should be quashed.

11       **2.    Oaktree's Documents Are Not Relevant to The Litigation.**

12       Even the requests that were not specifically rejected by the Colorado Court

13   are irrelevant as a result of Oaktree's relation to the litigation.   Oaktree oversees

14   Oaktree operating companies that administer and manage the funds that invested in a

15   limited partnership that invested in Acorn who acquired a portion of and manages

16   SIP, the holder of the notes on Debtor's property.   Oaktree is many steps removed

17   from the bankruptcy litigation and has never had direct interaction with Debtor or

18   Debtor's loans.   Any information that Oaktree actually possess was a result of

19   Debtor's unsolicited attempts to contact Oaktree executives or Oaktree's due

20   diligence in researching its investments.[2]   Neither of these items are relevant to the

21   Contested Matters, which will ultimately rest on the feasibility of Debtor's Plan of

22   Reorganization.

23       Rule 26 sets relevancy standards for a Rule 45 subpoena.   "Initially, the

24   burden is on the party seeking discovery to show why the party is entitled to the

25   discovery, in other words, that the discovery at least has some minimal relevance."

26     [1] Attached hereto as Exhibit B  is a chart showing each of the discovery requests in the Subpoena, the corresponding

27   request in Debtor's written discovery to SIP and the Colorado Court's ruling on SIP's objection to the request.
  [2] On several occasions Debtor has sent unsolicited emails and made unsolicited calls to Oaktree's executives.  While

28   Oaktree responded to Debtor's inquiries as a courtesy, those inquiries and responses do not mean that Oaktree has
documents relevant to Debtor's case.

**OAKTREE CAPITAL GROUP HOLDINGS GP, LLC'S**
**MOTION TO QUASH THE DEBTOR'S THIRD PARTY SUBPOENA**

1  *In re Plascencia*, 08-56305-ASW, 2012 WL 2161412 (Bankr. N.D. Cal. June 12,

2  2012).   The scope of discovery is not unlimited, but rather is confined in scope to

3  unprivileged matters relevant to the claims or defenses raised in the litigation.  *See*

4  F.R.C.P. 26(b)(1); *Lee v. Flagstaff Industries Corp.*, 173 F.R.D. 651, 653 (D. Md.

5  1997).   The Court may order discovery of any matter relevant to the subject matter

6  involved in the litigation, and has the power to enter an order compelling a party to

7  respond to discovery propounded by another party when it concerns the matters

8  involved in the litigation.   *ADnational Corp. v. Pac. Bell Directory (In re*

9  *ADnational Corp.)*, 2006 Bankr. LEXIS 4504 * 4 (Bankr. D. Md. Feb. 15, 2006)

10  (emphasis added) *citing* Rules 26(b)(1) and 37(a) as incorporated by Rules 7026 and

11  7037 of the Federal Rules of Bankruptcy Procedure.   Debtor cannot show that the

12  documents it requests from Oaktree are pertinent to the matters involved in the

13  litigation.   Thus, even the requests that might have been relevant to the parties to the

14  litigation are irrelevant here and warrant quashing the subpoena.

15  **B.      Debtor's Subpoena Should Be Quashed Because It Is Overly Burdensome.**

16         **1.      The Subpoena Must be Quashed Because It Is Duplicative and
17               Cumulative of the Written Discovery Debtor served on SIP.**

18         Rule 45 of the Federal Rules of Civil Procedure ("Rule 45") sets forth the

19  rules generally applicable to subpoenas issued by federal courts.   In particular, Rule

20  45(c)(3) sets forth the general standard for quashing a subpoena.   As the 1991

21  Advisory Committee Notes to Rule 45 explain, Rule 45(c)(3) is intended "as a

22  means of protecting a witness from misuse of the subpoena power."   Under Rule

23  45(c)(3)(A)(iv), the issuing court must quash or modify a subpoena that "subjects a

24  person to undue burden."   Although Rule 45(c)(3)(A)(iv) does not define the phrase

25  "undue burden," the discovery limits specified in Rule 26 are applicable.  *See* 1991

26  Adv. Comm. Note to Fed. R. Civ. Pro. 45 ("Paragraph (c)(3) explicitly authorizes

27  the quashing of a subpoena as a means of protecting a witness from misuse of the

28

1   subpoena power. It ... tracks the provisions of Rule 26(c)"); Wright & Miller, 9A

2   *Fed. Prac. & Proc. Civ.2d* § 2452 (2008) ("The great weight of authority, and

3   certainly the only tolerable rule, was that a subpoena *duces tecum* directed to a party,

4   if challenged, could be enforced only if the party who had it issued was able to make

5   the same showing of good cause that he or she would have had to make on a motion

6   under Rule 34.") (citing, inter alia, *Wirtz v. Local Union 169, Intern. Hod Carriers'*

7   *Bldg. and Common*, 37 F.R.D. 349, 351 (D. Nev. 1965)).

8        Given the applicability of the discovery limits contained in Rule 26 to

9   subpoenas, "[a] district court may quash or modify a subpoena if it seeks discovery

10  that is "unreasonably cumulative or duplicative." *See aaiPharma, Inc. v. Kremers*

11  *Urban Development Co.*, 361 F.Supp.2d 770, 773 (N.D. Ill. 2005) (citing F. R. Civ.

12  Pro. 26(b)(2); *Wollenburg v. Comtech Mfg. Co.*, 201 F.3d 973, 977 (7th Cir. 2000));

13  *see also Lectrolarm Custom Systems, Inc. v. Pelco Sales, Inc.*, 212 F.R.D. 567 (E.D.

14  Cal. 2002) (denying plaintiff's document requests as, inter alia, unreasonable and

15  duplicative of information sought by subpoena). Rule 26(b)(2)(C)(i) specifically

16  states that the court "must limit the frequency or extent of discovery ... if it

17  determines that: (i) the discovery sought is unreasonably cumulative or duplicative,

18  or can be obtained from some other source that is more convenient, less

19  burdensome, or less expensive."). As the 1983 Advisory Committees Notes to Rule

20  26 explain:

21              The objective [of Rule 26(b)] is to guard against
             redundant or disproportionate discovery by giving the
22           court authority to reduce the amount of discovery that
             may be directed to matters that are otherwise proper
23           subjects of inquiry. [Rule 26(b)] is intended to encourage
             judges to be more aggressive in identifying and
24           discouraging discovery overuse. [Rule 26(b)] is designed
             to minimize redundancy in discovery and encourage
25           attorneys to be sensitive to the comparative costs of
26           different methods of securing information. [Rule 26(b)]
27           also seeks to reduce repetitiveness and to oblige lawyers

28

                                         7

to think through their discovery activities in advance so that full utilization is made of each deposition, document request, or set of interrogatories.

Federal courts have invoked Rule 26 to prevent a party from obtaining discovery that overlaps with discovery previously sought by that party. *See Flanders v. Claydon*, 115 F.R.D. 70, 72 (D. Mass. 1987) (disallowing requests for admissions as cumulative and duplicative of a deposition previously taken); *City Consumer Services, Inc. v. Horne*, 100 F.R.D. 740, 748 (D. Utah 1983).

As discussed above, Debtor's Subpoena is facially duplicative of the written discovery already served upon and answered by SIP and Acorn. Moreover, Debtor defines Oaktree as "Oaktree Capital Group Holdings GP, LLC as well as its affiliates, parent companies, subsidiary companies, members, officers, partners, agents, employees, consultants, other representatives, and all Persons presently or formerly acting or purporting to act on Oaktree's behalf." Such a broad definition likely encompasses Acorn and may encompass SIP. The day to day transactions that touch Debtor's loans and as a result Debtor's bankruptcy litigation are all handled by SIP and Acorn. Thus, Debtor's subpoena will inevitably result in cumulative and duplicative production of documents, as Acorn and SIP have already disclosed thousands of documents. Such discovery is exactly what the Court's Rule 45 power to quash was intended to prevent. *See Lectrolarm*, 212 F.R.D. at 570. Debtor's subpoena should be quashed.

## 2. The Subpoena Must be Quashed Because Its Burden Outweighs Any Benefit.

A court may also limit discovery for any of the reasons stated in Rule 26(b)(2)(i), (ii), or (iii). Thus, a subpoena may be quashed if the burden and expense of the propounded discovery outweighs its likely benefit. *See* Fed. R. Civ. Proc. 26(b)(2); *Wi-Lan Inc. v. Research in Motion*, 2010 U.S. Dist. LEXIS 77776, *8 (C.D. Cal., July 28, 2010). The court is especially sensitive to this balancing

8

1    when the discovery is sought from a non-party. *Concord Boat Corp. v. Brunswick*

2    *Corp.*, 169 F.R.D. 44, 49 (S.D.N.Y. 1996)(more cases cited therein) "[T]he word

3    'non-party' serves as a constant reminder of the reasons for the limitations that

4    characterize third-party discovery." *Gonzales v. Google, Inc.*, 234 F.R.D. 674, 680

5    (N.D. Cal. 2000) (quoting *Dart Indus. Co. v. Packard Bell Elec., Inc.*, 163 F.R.D.

6    646, 649 (9th Cir. 1980)).

7         Generally, the determination of the reasonableness of a non-party subpoena

8    requires the balancing of the interests served by compliance with the subpoena

9    against the interests served by quashing it. *Wi-Lan*, 201 U.S. Dist. LEXIS, at *9. A

10   court determining the propriety of a subpoena balances the relevance of the

11   discovery sought, the requesting party's need, and the potential hardship to the party

12   subject to the subpoena. *Gonzales*, 234 F.R.D. at 680.

13        In this instance, the balancing of equities weighs in favor quashing the

14   Subpoena as Debtor's need is minimal compared to the burden Debtor seeks to place

15   on Oaktree. Oaktree is a multibillion dollar company that handles thousands of

16   financial transactions on any given day. One Oaktree's subsidiaries manages an

17   Oaktree fund that in vested in a limited partnership that owns an interest in Acorn.

18   Acorn is the manager and part owner of SIP. SIP, in turn, controls hundreds of

19   loans acquired from failing banks. Debtor's two loans are included in SIP's

20   portfolio. Oaktree's only direct interaction with Debtor and Debtor's loans came as

21   a result of Debtor's unsolicited attempts to contact Oaktree's executives. Despite

22   the lack of any direct interaction of Oaktree with Debtor's loans, Debtor now sends

23   Oaktree 26 requests for documents. The Subpoena demands that Oaktree search for

24   these documents across all its affiliates, parent companies, and subsidiary

25   companies. The Subpoena requires Oaktree to reach all its officers, partners, agents,

26   and employees for these documents. Such a search is likely to consume hundreds of

27   hours and thousands of dollars only to generate duplicative or irrelevant documents.

28   On this basis alone, the Subpoena should be quashed.

1

# IV.   CONCLUSION

2    For the foregoing reasons, Oaktree respectfully requests that this Court quash

3 the Debtor's Subpoena and find that Oaktree is not required to produce documents or

4 information.

5

6 DATED: October 29, 2013          BRYAN CAVE LLP

7

8                                 By: */s/ Kerry Moynihan*

9                                        KERRY MOYNIHAN
                                  Attorneys for Oaktree Capital Group
10                                        Holdings GP, LLC

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

10

EXHIBIT A

EXHIBIT A

Form 256 – Subpoena in a Case under the Bankruptcy Code (12/06)     2006 USBC, Central District of California

| UNITED STATES BANKRUPTCY COURT<br>CENTRAL DISTRICT OF CALIFORNIA | FOR COURT USE ONLY |
|---|---|
| In re:  MORREALE HOTELS, LLC<br>Tax ID / EIN: 20-4442439<br><br><br><br>Debtor | |
| To:<br>Oaktree Capital Group Holdings GP, LLC<br>333 South Grand Ave., 28th Floor<br>Los Angeles, CA 90071 | **SUBPOENA IN A CASE UNDER THE BANKRUPTCY CODE**<br><br>Case No.*: 12-35230-ABC  (*Colorado)<br>Chapter: 11 |

☐  YOU ARE COMMANDED to appear in the United States Bankruptcy Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

☐  YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| | |

☒  YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

Morreale Hotels, LLC requests production via mail or electronic mail at the address set forth below, but will agree to a mutually acceptable date, time and location in Los Angeles, CA if Oaktree objects to mail/email production.

| PLACE  Kutner Brinen Garber, PC, 303 E. 17th Avenue, Suite 500, Denver, CO 80203 | DATE AND TIME  By 5:00 p.m. on Wednesday, October 23, 2013 |
|---|---|

☐  YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this proceeding that is subpoenaed for the taking of a disposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.  Rule 30(b)(6), Federal Rules of Civil Procedure, made applicable in bankruptcy cases and proceedings by Rules 1018, 7030, and 9014, Federal Rules of Bankruptcy Procedure.

| ISSUING OFFICER SIGNATURE AND TITLE<br>*Lisa N. Nobles*  (Attorney for Debtor) | DATE<br>October 2, 2013 |
|---|---|
| ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER<br>Lisa N. Nobles, CA #233723.   303 E. 17th Ave., Suite 500, Denver CO 80203 | |

* If the bankruptcy case is pending in a district other then the district in which the subpoena is issued, state the district under the case number.

Form 256 – Subpoena in a Case under the Bankruptcy Code (12/06)                    2006 USBC, Central District of California

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| **SERVED** | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| | |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| | |

### DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
                        DATE

SIGNATURE OF SERVER
_____

ADDRESS OF SERVER
_____
_____

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006, made applicable in cases under the Bankruptcy Code by Rule 9016, Federal Rules of Bankruptcy Procedure:

**(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.**

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

**(d) DUTIES IN RESPONDING TO SUBPOENA.**

(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.

(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.

(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

**(e) CONTEMPT.** Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

IN RE:                                )
                                      )      Case No. 12-35230-ABC
MORREALE HOTELS, LLC                  )
EIN: 20-4442439                       )      Chapter 11
                                      )
     Debtor.                          )

## DEBTOR'S FIRST SET OF WRITTEN DISCOVERY TO
## OAKTREE CAPITAL GROUP HOLDINGS GP, LLC

Morreale Hotels, LLC (the "Debtor"), the Debtor and Debtor-in-Possession, by and through its attorneys Kutner Brinen Garber, P.C. and pursuant to Fed. R. Civ. P. 45, as incorporated by the Federal Rule of Bankruptcy Procedure 9016, hereby serves upon Oaktree Capital Group Holdings GP, LLC the following Request for Production of Documents. **Responses are due within <u>21 days</u> of the date of this discovery, on or before <u>Wednesday, October 23, 2013</u>.**

## INSTRUCTIONS AND DEFINITIONS

In answering this Written Discovery (the "Discovery") you are required to furnish such information as is available to you, including information in your possession, the possession of your attorney or anyone employed on your attorney's behalf, not merely such information known of your own personal knowledge. If you cannot answer the following Discovery in full after exercising due diligence to secure the information, so state and answer to the extent possible, specifying your inability to answer the remainder and stating whatever information or knowledge you may have concerning the unanswered portion. This Discovery is continuing in nature and Debtor requests that any information coming into the possession of Oaktree Capital Group Holdings GP, LLC or its counsel that would change the answers to this Discovery in any way be furnished to Debtor.

It is requested that in responding to this Discovery, that you state the Discovery request first and then follow the statement by either answer or objection in order that continuity may be maintained. If any documents or information is withheld on the basis of privilege, or for any other reason, please indicate that in the answer and provide a privilege log with the nature of the information or documents withheld, including the date any documents were generated, the specific privilege claimed, and the basis of the withholding of information.

For the purpose of this Discovery, the following definitions and additional instructions shall apply:

1.      The term "Broadway Property" shall mean the Debtor's real property located at 101 -115 Broadway, Denver, Colorado also known and numbered as 21 West 1st Avenue, Denver, Colorado.

2.      The term "Broadway Loan" shall mean the loan agreement and promissory note executed by the Debtor, originally for the benefit of FirstTier Bank ("FirstTier"), on or about July 25, 2008, which is now held by 2011-SIP-1 CRE/CADC Venture, LLC (CRE Loan No. 101698-001) and is secured by the Broadway Property.

3.      The term "City" shall mean the City and County of Denver, Colorado as well as its departments and offices (including but not limited to representatives, directors, officers, employees, attorneys and accountants, including, but not limited to, Michael Roach and Tom Downey).

4.      The term "Colfax Property" shall mean the Debtor's real property located at 3015 E. Colfax Ave., Denver, Colorado, also associated with 1500 Milwaukee St., Denver, Colorado.

5.      The term "Colfax Loan" shall mean the loan agreement and promissory note executed by the Debtor, originally for the benefit of FirstTier Bank ("FirstTier"), on or about November 14, 2005, which is now held by 2011-SIP-1 CRE/CADC Venture, LLC (CRE Loan No. 101661-001) and is secured by the Colfax Property.

6.      The term "Communication" includes any exchange of words, thoughts, ideas, or documents by any means, whether oral, electronic, written or otherwise.

7.      The term "CRE" shall mean 2011-SIP-1 CRE/CADC Venture, LLC, Sabal Financial, as well as their affiliates, parent companies, subsidiary companies, members, officers, partners, agents, employees, consultants, other representatives, and all Persons presently or formerly acting or purporting to act on CRE's behalf (including but not limited to its attorneys and accountants).

8.      The term "Oaktree" shall mean Oaktree Capital Group Holdings GP, LLC as well as its affiliates, parent companies, subsidiary companies, members, officers, partners, agents, employees, consultants, other representatives, and all Persons presently or formerly acting or purporting to act on Oaktree's behalf, including Oaktree Capital Management, L.P. (also including but not limited to its attorneys and accountants).

9.      The terms "Debtor" and "MHL" shall mean Morreale Hotels, LLC.

10.     The term "Disclosure Statement" means the approved Fourth Amended Disclosure Statement filed on August 8, 2013 (12-35230-ABC).

11.     The term "Document" or "Documents" means every original (any copy of any original and any copy which differs in any way from any original, e.g., because handwritten or "blind" notes appear thereon or are attached thereto) of every writing and

recording, computerized records, digital or electronically stored data, photographs, or other memorialization, of every kind or description, whether handwritten, typed, drawn, sketched, printed or recorded by any physical, mechanical, magnetic, optical, electronic, or electrical means whatsoever, and shall include, by way of illustration only and not by way of limitation, notes, correspondence, e-mails, communications of any nature, telegrams, memoranda, advertisements, books, records, analyses, notebooks, blueprints, maps, surveys, graphs, charts, plans, summaries or records or transcriptions of personal conversations or statements however made, business forms, labels, appointment books, diaries, routing slips, reports, publications, photographs, films, minutes and other formal or informal memoranda of meetings, transcripts or oral testimony or statements, reports and/or summaries of interviews, negotiations or investigations, agreements and contracts, including all modifications and/or revisions thereof, papers and forms filed with courts or other governmental bodies, notices, messages, calendar entries, brochures, pamphlets, press releases, drafts, revisions of drafts and translations of any documents, tape recordings, audio recordings, video recordings, records and dictation belts to which you or your company now has or has had access to in the past. Any document with any marks on any sheet or side thereof, including by way of illustration only and not by way of limitation, initials, stamped indicia, any comment or any notation of any character and not part of the original text, or any reproduction thereof, is to be considered a separate document for purposes of this Definition.

12.     The term "FDIC" shall mean the Federal Deposit Insurance Corporation.

13.     The term "FirstTier Bank" shall refer to FirstTier Bank which was closed and placed into receivership by the FDIC on January 28, 2011, and include its officers, directors, agents, employees or representatives.

14.     The "Hotel Properties" shall refer to the Colfax Property and the Broadway Property collectively.

15.     The "Loans" means the Broadway Loan and the Colfax Loan collectively.

16.     The term "Plan" shall refer to the Restated First Amended Plan of Reorganization Dated April 3, 2013, and any amendment thereto.

17.     The "Office of the United States Trustee" or "U.S. Trustee" shall refer to the component of the U.S. Department of Justice responsible for overseeing the administration of bankruptcy cases, including its U.S. Trustees, Assistant U.S. Trustees, trial attorneys, bankruptcy analysts, agents, employees, other representatives and all Persons presently or formerly acting or purporting to act on the U.S. Trustee's behalf (including but not limited to attorneys and accountants).

18.     The "SBA" shall refer to the  U.S. Small Business Administration and Colorado Lending Source, Ltd. f/k/a Front Range Regional Economic Development Corporation d/b/a Colorado Lending Source as a servicing agent for the U.S. Small Business Administration as well as its affiliates, parent company, subsidiary companies,

3

members, officers, partners, agents, employees, consultants, other representatives, and all Persons presently or formerly acting or purporting to act on the SBA's behalf (including but not limited to attorneys and accountants).

19.   "Person" includes any individual, business, firm, joint venture, partnership, corporation, group, association or organization, and reference to any person throughout this Discovery includes such person's agent, officer, employer, employee, representative, contractor, sub-contractor, and attorney.

20.   "Regarding," "Relate to," "relates to" or "relating to" means constitute, relating to, refer to, reflect, mention, evidence, concern, pertain to, arise out of, summarize, analyze, or be logically or factually connected in any way with the matter discussed.

21.   The terms "and" and "or" shall be construed to make the Request inclusive rather than exclusive.  Similarly, any term used in the singular shall include the plural of that term and any reference to one gender shall include both, when doing so renders the Interrogatory more inclusive.

22.   The terms "you" and "your" and "Oaktree" shall refer to Oaktree Capital Group Holdings GP, LLC as well as its affiliates, parent companies, subsidiary companies, members, officers, partners, agents, employees, consultants, other representatives, and all Persons presently or formerly acting or purporting to act on Oaktree's behalf (including but not limited to its attorneys and accountants).

23.   The phrases "referring or relating to" and "refer or relate to" mean any and all information and documents which directly or indirectly bear upon, touch upon, incorporate, affect, include, pertain to or otherwise are logically connected with the subject matter about which inquiry is being made.

24.   Any information or document responsive to this Discovery which is not produced or disclosed by reason of a claim of privilege or work product, or for any other reason, shall be identified by: (i) general subject matter, (ii) identity of person(s) to whom the information, or any portion thereof, has already been revealed, (iii) source of the information, (iv) method of communication to you or the manner in which you first acquired knowledge of the information and (v) the precise basis upon which the information or document is being withheld.

25.   If the answer to any of the Discovery is that you lack knowledge of the requested information, describe all efforts made by you to obtain the information necessary to answer the Discovery.

26.   In the event that more than one copy of a document exists, the original shall be produced, as well as every copy on which appears any notation or marking of any sort not appearing on the original.  For any documents which are stored or maintained in files in the normal course of business, such documents shall be produced in

4

such files, or in such a manner so as to preserve and indicate the file from which such documents were taken.

27.     All documents produced shall be identified as to their nature and shall be specifically designated as to which number of the production requests they respond.

28.     The documents and other materials requested herein shall be mailed, emailed or otherwise produced to the offices of Kutner Brinen Garber, P.C., Attn: Lisa N. Nobles, CA #233723, 303 East 17th Avenue, Suite 500, Denver, Colorado 80203 (lnn@kutnerlaw.com). If Oaktree objects to production in this method, the Debtor will arrange for physical production at a mutually acceptable date, time and place in Los Angeles, California.

## REQUESTS FOR PRODUCTION OF DOCUMENTS

For the purposes of the pending action, Debtor requests that Oaktree identify the documents being produced in response to each Request for Production of Documents:

1.     Produce all written or recorded Communications and correspondence, including letters and emails, between FirstTier and Oaktree, whether sent to or from You, for the time period of 2008 through the present related in any way to the Hotel Properties and/or the Colfax Loan and/or the Broadway Loan.

2.     Produce all written or recorded Documents, Communications and correspondence, including letters and emails, between the FDIC and Oaktree, whether sent to or from You, for the time period of 2008 through the present related in any way to the Hotel Properties and/or the Colfax Loan and/or the Broadway Loan.

3.     Produce all written or recorded Documents, Communications and correspondence, including letters and emails, between the SBA and Oaktree, whether sent to or from You, for the time period of 2008 through the present related in any way to the Hotel Properties and/or the Colfax Loan and/or the Broadway Loan.

4.     Produce all written or recorded Documents, Communications and correspondence, including letters and emails, between the Office of the United States Trustee and Oaktree, whether sent to or from You, for the time period of 2012 through the present related in any way to the Hotel Properties and/or the Colfax Loan and/or the Broadway Loan.

5.     Produce all written or recorded Documents, Communications and correspondence, including letters and emails, between the City and County of Denver and Oaktree whether sent to or from You, for the time period of 2008 through the present related in any way to the Hotel Properties and/or the Colfax Loan and/or the Broadway Loan.

6.     Produce all written or recorded Documents, Communications and correspondence, including letters and emails, between the CRE and Oaktree whether sent

to or from You, for the time period of 2008 through the present related in any way to the Hotel Properties and/or the Colfax Loan and/or the Broadway Loan.

7.     Produce all Documents that evidence the amount Oaktree has received in payments, reimbursements, or any other compensation in exchange for managing the Loans, including servicing the Loans, evaluating and responding to loss mitigation applications, or prosecuting of any Loan documents or guarantees.

8.     Produce all Documents that evidence the amount Oaktree paid to the FDIC to acquire the Colfax Loan.

9.     Produce all Documents that evidence the amount Oaktree paid to the FDIC to acquire the Broadway Loan.

10.     Produce all Documents that evidence the amount Oaktree paid to the FDIC to acquire its interest in CRE.

11.     Produce all Documents that evidence the way Oaktree evaluated and valued the Hotel Properties in 2008 and at any time through the present.

12.     Produce all Documents evidencing any agreement between Oaktree and the FDIC regarding the Colfax Loan.

13.     Produce all Documents evidencing any agreement between Oaktree and the FDIC regarding the Broadway Loan.

14.     Produce any and all Documents evidencing any payment, advance or reimbursement from the FDIC to Oaktree under any agreement in connection with the Broadway Loan.   Such request includes any payment, advance, or reimbursement for taxes, insurance, attorney fees, or other costs.

15.     Produce any and all Documents evidencing any payment, advance or reimbursement from the FDIC to Oaktree under any agreement in connection with the Colfax Loan.   Such request includes any payment, advance, or reimbursement for taxes, insurance, attorney fees, or other costs.

16.     Produce all Documents and Communications related to any so-called "third-party agreement" between FirsTier and its successors and assigns and the SBA.

17.     Produce all Documents and Communications evidencing that the third-party agreement referenced the in the above paragraph has been honored or violated.

18.     Produce all minutes of meetings of Oaktree, including its board of directors or any committees, which relate to Morreale Hotels, LLC and/or Jesse Morreale.

19.     Produce all internal Communications at Oaktree, including between its employees, board of directors or any committees, or parent companies, which relate to Morreale Hotels, LLC and/or Jesse Morreale

20.     Produce a full copy of any appraisal, broker price opinion, market analysis, valuation report, or other valuation, including any updates or supplements, in your possession regarding the Broadway Property.  This Request includes any such appraisals, opinions or analyses requested by FirstTier Bank, the FDIC, Oaktree, or CRE.

      a.  Produce any internal Communications, or Communications with third parties or experts, related to the appraisals, opinions, analyses, or valuations referenced in the above paragraph.

      b.  Produce a full copy of any overall property evaluation or property condition report, including any updates or supplements, in your possession regarding the Broadway Property.  This Request includes any such evaluations, opinions or analyses requested by FirstTier Bank, the FDIC, Oaktree, or CRE.

      c.  Produce any environmental and/or hazardous material reports, analyses, evaluations, or studies in Your possession or control on the Broadway Property.

      d.  Produce any architectural, engineering, or other professional studies, reports, opinions in Your possession or control regarding the Broadway Property.

21.     Produce a full copy of any appraisal, broker price opinion, market analysis, valuation report, or other valuation, including any updates or supplements, in your possession regarding the Colfax Property.   This Request includes any such appraisals, opinions or analyses requested by FirstTier Bank, the FDIC, Oaktree, or CRE.

      a.  Produce any internal Communications, or Communications with third parties or experts, related to the appraisals, opinions, analyses, or valuations referenced in the above paragraph.

      b.  Produce a full copy of any overall property evaluation or property condition report, including any updates or supplements, in your possession regarding the Broadway Property.  This Request includes any such evaluations, opinions or analyses requested by FirstTier Bank, the FDIC, Oaktree, or CRE.

      c.  Produce any environmental and/or hazardous material reports, analyses, evaluations, or studies in Your possession or control on the Colfax Property.

      d.  Produce any architectural, engineering, or other professional studies, reports, opinions in Your possession or control regarding the Colfax Property.

22.     Produce any Documents, records or notes from meetings, discussions, or other Communications with Debtor or Jesse Morreale.

23. Produce all Documents or Communications regarding Jesse Morreale's emails to Howard Marks and responses from Mark Jacobs at Oaktree to Jesse Morreale.

24. Produce all Documents and Communications related in any way to any FDIC, Congressional, or Congressman Ed Perlmutter's inquiry into Oaktree, CRE, or Sabal's handling of the Debtor's Broadway Loan and/or Colfax Loan.

25. Produce any Documents, including organizational, operating and servicing agreements, that set forth Your policy or restrictions regarding Your loans that are secured by real property with environmental or hazardous materials issues.

26. Produce any Documents, including organizational, operating and servicing agreements, that set forth Your policy or restrictions regarding whether You may have any ownership or membership interest whatsoever in any Borrower or Obligor.

**Responses are due within 21 days of the date of these requests, on or before Wednesday, October 23, 2013.**

DATED: October 2, 2013.

Respectfully submitted,

By _____

Lisa N. Nobles, CA #233723
KUTNER BRINEN GARBER, P.C.
303 E. 17th Avenue, Suite 500
Denver, CO 80203
Telephone: (303) 832-2400
Facsimile: (303) 832-1510
email: lnn@kutnerlaw.com

8

EXHIBIT B

EXHIBIT B

## Morreale Hotels, LLC Discovery/Subpoena Comparison Chart

| Discovery Request Number | Subpoena Request Number | Objection | Resolution |
|---|---|---|---|
| RFP 1 | RFP 1 | None | SIP did not object. |
| RFP 2 | RFP 2 | Relevancy | **SIP not required to produce** |
| RFP 3 | RFP 3 | Relevancy | **SIP not required to produce** |
| RFP 4 | RFP 4 | Relevancy | **SIP not required to produce** |
| RFP 5 | RFP 5 | Relevancy | SIP required to produce |
|  | RFP 6 |  | Not in written discovery to SIP |
| RFP 9 | RFP 7 | None | SIP agreed to produce |
| RFP 11 | RFP 8 | None | SIP agreed to produce publicly available information |
| RFP 12 | RFP 9 | None | SIP agreed to produce publicly available information |
| RFP 13 | RFP 10 | None | SIP agreed to produce publicly available information |
| RFP 14 | RFP 11 | Relevancy | **SIP only required to produce documents regarding valuation of loan** |
| RFP 15 | RFP 12 | Relevancy | SIP required to produce |
| RFP 16 | RFP 13 | Relevancy | SIP required to produce |
| RFP 17 | RFP 14 | None | SIP agreed to produce |
| RFP 18 | RFP 15 | None | SIP agreed to produce |
| RFP 19 | RFP 16 | Relevancy | **SIP not required to produce** |
| RFP 20 | RFP 17 | Relevancy | **SIP not required to produce** |
| RFP 21 | RFP 18 | Relevancy | **SIP not required to produce** |
| RFP 22 | RFP 19 | None | SIP agreed to produce |
| RFP 23 | RFP 20 | None | SIP agreed to produce |
| RFP 24 | RFP 21 | None | SIP agreed to produce |
| RFP 31 | RFP 22 | None | SIP agreed to produce |
| RFP 33 | RFP 23 | Relevancy | **SIP not required to produce** |
| RFP 38 | RFP 24 | Relevancy | **SIP not required to produce** |
| RFP 35 | RFP 25 | None | SIP agreed to produce |
| RFP 36 | RFP 26 | None | **SIP not required to produce** |

1
2

PROOF OF SERVICE<br>1013 A(3) CCP REVISED 5/1/88

3

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

4
5

I am employed in the County of Los Angeles, State of California. I am over the

6

age of 18 and not a party to the within action. My business address is 120 Broadway, Suite 300,

7

Santa Monica, CA 90401-2386.

8

On <u>October 29, 2013</u>, I served the foregoing document described as **OAKTREE**

9

**CAPITAL GROUP HOLDINGS GP, LLC'S MOTION TO QUASH THE DEBTOR'S**

10

**THIRD PARTY SUBPOENA** on the interested party in this action by placing a true and correct

11

copy thereof enclosed in a sealed envelope addressed as follows:

12

Lisa N. Nobles
303 E. 17th Avenue, Suite 500
Denver, CO 80203

13

☒        BY MAIL: I am "readily familiar" with the firm's practice of collection

14

and processing correspondence for mailing. Under that practice it would be deposited with U.S.

15

postal service on that same day with postage thereon fully prepaid at Santa Monica, California in

16

the ordinary course of business. I am aware that on motion of the party served, service is

17

presumed invalid if postal cancellation date or postage meter date is more than one day after date

18

of deposit for mailing in affidavit.

19

☐        BY PERSONAL SERVICE: I caused the above-mentioned document to

20

be personally served to the offices of the addressee.

21

☐        BY FACSIMILE: I communicated such document via facsimile to the

22

addressee as indicated on the attached service list.

23

☐        BY FEDERAL EXPRESS: I caused said document to be sent via Federal

24

Express to the addressee as indicated on the attached service list.

25

Executed on <u>October 29, 2013</u>, at Santa Monica, California.

26
27
28

11

**OAKTREE CAPITAL GROUP HOLDINGS GP, LLC'S**<br>**MOTION TO QUASH THE DEBTOR'S THIRD PARTY SUBPOENA**

1          ☒          (FEDERAL) I declare that I am employed in the office of a member of the

2     bar of this court at whose direction the service was made.

3

4     _____

5                                        Raul Morales

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

12

**OAKTREE CAPITAL GROUP HOLDINGS GP, LLC'S**
**MOTION TO QUASH THE DEBTOR'S THIRD PARTY SUBPOENA**